IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE HEALTHCARE PROPRIETORS AGENCY, INC., ET AL. | CIVIL ACTION |
| Versus | NO: 11-2511 |
| THE TAX CREDIT PROCESSING CENTER, LLC d/b/a TAXBREAK | SECTION: "F" |

ORDER & REASONS

Before the Court is the plaintiffs' motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e). For the reasons that follow, the motion is denied.

**Background**

This case arises out of a dispute over tax services. Plaintiffs are a group of Louisiana-based nursing homes and health care entities, who contracted with defendant TaxBreak, LLC for help with their federal tax credits.

Plaintiffs filed suit against TaxBreak in Louisiana state court and TaxBreak removed the case to federal district court. Plaintiffs asserted that TaxBreak is neither a law firm, nor an accounting firm and therefore was not properly licensed to provide the plaintiffs with accounting and tax services in Louisiana. Second, plaintiffs argued that TaxBreak charged them contingency fees which were "excessive, unreasonable and not commensurate with the value of the services performed." Finally, plaintiffs asserted that TaxBreak was negligent in advising them

1

that they were eligible for Work Opportunity Credits when in fact the statute of limitations for claiming those credits had already expired. Plaintiffs sought a declaratory judgment that the services agreement between the parties was unenforceable as against the public policy of the State of Louisiana, a declaratory judgment holding that the fees charged by TaxBreak was excessive, unreasonable, and not commensurate with the value of the services provided, and a judgment for all damages that the plaintiffs incurred because TaxBreak incorrectly advised them that they were eligible for Work Opportunity Credits.

Defendant moved to dismiss for lack of personal jurisdiction, or in the alternative, to transfer venue, which this Court granted by Order and Reasons dated December 12, 2011.

### I. Rule 59(e)

Rule 59(e) of the Federal Rules of Civil Procedure provides that a motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment. Fed.R.Civ.P. 59(e).[1]

"A Rule 59(e) motion 'calls into question the correctness of a judgment.'" Templet v. Hydrochem, Inc., 367 F.3d 473, 478 (5th Cir. 2004) (quoting In re Transtexas Gas Corp., 303 F.3d 571, 581 (5th Cir. 2002)). Because of the interest in finality, Rule 59(e) motions may only be granted if the moving party shows there

---

[1] Rule 59 had formerly adopted a 10-day period for post-judgment motions; however, the rule was amended in 2009 to expand the 10-day period to 28 days.

was a mistake of law or fact or presents newly discovered evidence that could not have been discovered previously. Id. at 478-79. Moreover, Rule 59 motions should not be used to relitigate old matters, raise new arguments, or submit evidence that could have been presented earlier in the proceedings. See id. at 479; Rosenblatt v. United Way of Greater Houston, 607 F.3d 413, 419 (5th Cir. 2010)("a motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued'")(citing Rosenzweig v. Azurix Corp., 332 F.3d 854, 864 (5th Cir. 2003)(quoting Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990)). The grant of such a motion is an "extraordinary remedy that should be used sparingly." Indep. Coca-Cola Employees' Union of Lake Charles, No. 1060 v. Coca-Cola Bottling Co. United, Inc., 114 Fed.Appx. 137, 143 (5th Cir. Nov. 11, 2004) (citing Templet, 367 F.3d at 479). The Court must balance two important judicial imperatives in deciding whether to reopen a case in response to a motion for reconsideration: "(1) the need to bring the litigation to an end; and (2) the need to render just decisions on the basis of all the facts." Templet, 367 F.3d at 479.

## II. Discussion

The Court denies plaintiffs' motion to alter or amend the

judgment because neither of the plaintiffs' arguments changes this Court's determination that TaxBreak's contacts with Louisiana do not satisfy the minimum contacts necessary for a finding of personal jurisdiction in this case. As the Court stated in its December 7, 2011 Order & Reasons, "plaintiffs fail to show any forum-related activity on the defendant's part other than a few emails from Kent Back, and an apparent visit that he made to the state."

In Moncrief Oil Int'l, Inc. v. OAO Gazprom, 481 F.3d 309 (5th Cir. 2007), the Fifth Circuit considered the plaintiff's breach of contract and tort claims against the defendant in connection with an agreement between the plaintiff and defendant to collaborate in the development of a foreign gas field. The plaintiff in Moncrief was a Texas corporation, while the defendant was a Russian corporation. Following a dispute, the plaintiff sued the defendant in federal district court in Texas, but the district court dismissed for lack of personal jurisdiction. After considering the factual circumstances of the case, as well as the contract governing the parties' relationship, the Fifth Circuit affirmed the district court's dismissal.

In considering the personal jurisdiction question for Zapsib (one of the defendant companies), the Fifth Circuit looked at four factors: (1) where the "hub of the parties' activity" was

under the contract; (2) whether the contract contained an arbitration clause; (3) whether the contract contained a choice of law clause, and (4) whether the defendant's officers had made any visits to Texas. The Fifth Circuit did not say that these were the only possibly relevant factors, but it nonetheless assigned significant weight to them in the context of the case.[2]

On the first factor, the Fifth Circuit noted that

> Moncrief agreed to perform analysis, without any discussion of where it would be done. The contract was silent as to location. Given the nature of the work, there's no indication that the location of the performance mattered, and it is not clear how performance of that work would "cause business activity.

Id. at 313. This fact, the Fifth Circuit noted, lessened the plaintiff's argument that by contracting with Moncrief, the defendant had "purposefully availed itself of doing business in Texas." Id. The Fifth Circuit further found that the contract contained a mandatory arbitration clause fixing arbitration in

---

[2] The Fifth Circuit has relied on the Moncrief factors in later cases as well. See, e.g., Cardinal Health Solutions, Inc. v. St. Joseph Hospital, 314 Fed. Appx. 744, 745 (5th Cir. 2009)(considering communications between the plaintiff and defendant "in the course of developing and carrying out a contract;" where the hub of business activity would be under the contract; and whether the contract contained a choice of law provision). See also PPO Check, Ltd. v. Midwestern Regional Medical Center, No. H-06-3708, 2007 U.S. Dist LEXIS, at * 17-18 (S.D. Tex. July 10, 2007) (considering where the contract was negotiated, where it was executed, whether the contract contained a forum selection or choice of law clause, and the place of performance for the contract as factors for determining purposeful availment).

Russia, and a choice of law provision selecting Russian law to govern the contract.  Id.  The appeals court also noted that one of the defendant's executives had visited Texas, but the court did not give that visit any weight because, although it "helped to further planning and negotiations, [...] no agreement was established during the trip."  Id.

Considering the Moncrief factors, the Court continues to find that personal jurisdiction is lacking in this case as well.

First, the Agreements at issue here are similarly silent as to where TaxBreak will perform its work.  Unlike Moncrief, however, the record in this case contains an undisputed affidavit from TaxBreak's Chief Financial Officer, Michael McCullars, stating that TaxBreak performed the tax advisory work for plaintiffs in Alabama.  There is, therefore, even more evidence in this record that the hub of activity under the contract took place outside the forum state, Louisiana.

Second, each Agreement contains a choice of law provision, which unambiguously states that "[t]his contract shall be governed by the laws of the State of Alabama. . . ."

Third, the timeline of this case betrays the plaintiffs' assertions that Kent Back's (single) visit to Louisiana led directly to the plaintiffs entering into Agreements with TaxBreak.  According to the Agreements, they were either signed in April or June of 2010.  Back's visit appears to have taken

place in February 2009, more than one year before any of the Agreements were executed.  At the very least, this gap confirms that Back's visit to Louisiana did not cement any deal.  And as the Fifth Circuit demonstrated in <u>Hydrokinetics, Inc. v. Alaska Mechanical, Inc.</u>, 700 F.2d 1026, 1029 (5th Cir. 1983), even trips by a company's executives to affirmatively close a business deal do not rise to the level of minimum contacts.  <u>Id.</u> ("Although the bargain may have been cemented in Texas when Hydrokinetics accepted Alaska Mechanical's offer, the significance of that is diminished by the provision specifying that the agreement be governed and construed according to the laws of the state of Alaska.").  The <u>Hydrokinetics</u> court concluded that although all factors (including the visits) are obviously relevant, the purposeful availment determination must be made based on the "totality of the facts" of the case.  <u>Id.</u>

Having considered the relevant factors in the case, the Court continues to find that personal jurisdiction over TaxBreak is lacking.

Accordingly, IT IS ORDERED: the plaintiffs' motion is DENIED.

New Orleans, Louisiana, January 20, 2012.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE